**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
NANCY LIBETH MORALES RUIZ, *individually*
*and on behalf of all others similar situated*,

                       *Plaintiff*,

            -against-

MAP FOODS INC. D/B/A MICHAEL
ANTHONY'S PIZZERIA & RESTAURANT
AND MICHAEL CALLARI, *as an individual*,

                       *Defendants*.
-------------------------------------------------------------X

                                  **MEMORANDUM**
                                  **AND ORDER**
                               24-cv-02257 (JMW)

**A P P E A R A N C E S:**

       Katelyn Schillaci, Esq.
       **Helen F. Dalton & Associates, PC**
       80-02 Kew Gardens Road, Suite 601
       Kew Gardens, New York 11415
       *Attorneys for Plaintiff*

       James F. Murphy, Esq.
       **Lewis Johs Avallone Avile**, LLP
       1377 Motor Parkway, Suite 400
       Islandia, New York 11749
       *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

     Plaintiff Nancy Libeth Morales Ruiz ("Plaintiff"), a former employee of Defendants MAP

Foods Inc., and Michael Callari (collectively, "Defendants"), commenced this action on March 27,

2024 on behalf of herself and other similarly situated against Defendants alleging claims for unpaid

overtime wages as well as associated attorneys' fees and costs pursuant to the Fair Labor Standards

Act of 1938, 29 U.S.C. 206 *et seq*. ("FLSA") and the N.Y. Lab. Law 650 and 652 *et seq.* ("NYLL")

and spread of hours pursuant to the spread of hours wage order of the New York Commission of

Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, 137-1.7 (2006) (the "Spread of Hours Wage Order"). (ECF No. 1) Following mediation before the EDNY FLSA Mediation Panel, the parties reported that they had reached a settlement in principle, and subsequently consented to the undersigned's jurisdiction for all purposes. (ECF Nos. 19, 20.) Now before the Court is Plaintiff's First Motion for Settlement Approval.  (ECF No. 20.)  For reasons stated herein, Plaintiff's Motion is **GRANTED**, and the proposed Settlement Agreement (ECF No. 20) is therefore approved.

## BACKGROUND

Plaintiff was employed by Defendants primarily as a food preparer, cook and cleaner for nearly two years between approximately April 2022 through February 2024.  (ECF No. 1 at 4.) On March 27, 2024, Plaintiff filed a complaint on behalf of herself against Defendants alleging "violations of state and federal wage and hour laws arising out of Plaintiff's employment at MAP Foods." (*Id*. at 1.)

More specifically, Plaintiff alleged that Defendants: (i) "failed to pay Plaintiff's overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiff was entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1)[;]" (ii) "failed to pay Plaintiff's overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Plaintiff was entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R.137-1.3[;]" (iii) "fail[ed] to pay Plaintiff an additional hour of pay at minimum wage for each day worked more than ten (10) hours, in violation of the New York Minimum Wage Act and its implementing regulations[;] (iv) "failed to provide Plaintiff with a written notice, in English and in Spanish (Plaintiff's primary language), of her rate of pay, regular pay day, and such other information as

required by NYLL §195(1)[;]" and (v) "failed to provide Plaintiff with wage statements upon each payment of wages, as required by NYLL §195(3)." (*Id.*)

On September 11, 2024, Plaintiff advised the Court via letter motion that the parties reached a settlement and sought approval from this Court of the proposed settlement agreement (hereafter, the "Settlement Agreement") (ECF. No. 20), which includes approval regarding the reasonableness of the attorneys' fees. (*Id.*) On September 11, 2024, the parties consented to the undersigned's jurisdiction for all purposes, and the case was subsequently reassigned to the undersigned for all further proceedings.  (ECF Nos. 19.)

## DISCUSSION

### A. Applicable Standard

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

> (i) a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act.  *Cheeks*, 796 F.3d at 206.  Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.*  (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).  The protections of the FLSA are strong, even "employees cannot waive the protections of the FLSA."  *Perry v. City of New York*, No. 21-2095, 2023 WL 5490572, at *7 (2d Cir. Aug. 25, 2023).

Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. "[I]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018, *report and recommendation adopted*, 2018 WL 741369 (Feb. 7, 2018). In reviewing the reasonableness of any proposed settlement, courts consider the totality of the circumstances, including the following relevant factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

Factors specifically weighing against settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id.* at 336 (internal quotation marks omitted).

Even if an application of the *Wolinsky* factors demonstrates that the agreement is fair and reasonable, courts must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*[.]" *Ezpino v. CDL Underground Specialists, Inc.*, No, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017), *report and*

*recommendation adopted*, 2017 WL 3037406 (July 17, 2017).  Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation."  *Cheeks*, 796 F.3d at 206.

Courts must also ensure that any attorney's fees provided for in the agreement are reasonable.  *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *see also Ceesae*, 2018 WL 1767866, at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement").  Where a court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 597 (2d Cir. 2020).  That is, it is not this Court's role to "blue pencil" or modify the proposed agreement.  Rather, the Court's role is simply to assess the terms of the proposed settlement to ensure that the agreement is fair and reasonable.  *Wolinsky*, 900 F. Supp. 2d at 335 ("[B]efore a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable.").

## B. <u>The Settlement Agreement</u>

The Settlement Agreement totals $32,000.00, with Plaintiff receiving $20,568.67 and Plaintiff's counsel receiving $11,431.33 in fees and litigation costs. (ECF No. 20 at 4.) The settlement will be paid in four equal monthly installments with the first being "within thirty (30) days of Court approval of the Settlement." (*Id.* at 6.) The following three installments will be paid,

"within 30 days of the Payment Due Date in Paragraph 1(a)(i) and continuing every month for three months." (*Id.*) Each installment will feature one check payable to Plaintiff for Five Thousand One Hundred Forty-Two Dollars and Seventeen Cents ($5,142.17) and one check payable to Plaintiff's counsel for Two Thousand Eight Hundred Fifty-Seven Dollars and Eighty-Three Cents ($2,857.83) (*Id.*)  Plaintiff additionally agrees, for herself, her heirs, executors, administrators, agents and assigns to release and forever discharge Defendants, Defendants' corporations, their respective current and former officers, directors, owners, agents, and each of their respective successors and assigns:

> [O]f and from all or any manner of actions, causes and causes of action, suits, obligations, damages, complaints, liabilities, losses, covenants, contracts, controversies, agreements, promises, and expenses (including attorneys' fees and costs), whatsoever at law or in equity ("claims"), which were alleged in the Complaint filed in this action, specifically including Fair Labor Standards Act (the "FLSA") and New York Labor Law ("NYLL"), and its associated regulations concerning unpaid wages, recordkeeping violations and failure to provide proper wage notice or wage statements, or based on or arising out of any acts, omissions, conduct, thing or matter from the beginning of time up to and including the date the District Court dismisses the Action with prejudice, (a) relating to or arising out of wages, hours, overtime, or wage deductions, and (b) arising under or for alleged violations of the Fair Labor Standards Act and/or the New York Labor Law or associated regulations and laws.

(*Id.* at 8.)

However, the Settlement Agreement does not include any provisions that prevent the Defendants from initiating any counterclaims arising out of this action against Plaintiff. The Release does not waive all possible claims and in fact takes special care to ensure that "the Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action." (*Id.* at 3-4.)  Notably, the Settlement Agreement does *not* contain a Confidentiality Clause. The Agreement includes a Stipulation of Dismissal, which includes language stating that this Court

will retain jurisdiction to enforce the parties' settlement agreement and release, "the parties agree that this Court, the United States District Court, Eastern District of New York, will retain jurisdiction over this matter in the event either party defaults with respect to their obligations under the Agreement and to enforce the terms of the Agreement. (*Id*. at 2.) For the reasons set forth below, the Court finds that these terms are acceptable.

## C.  The *Wolinksy* Factors

Having reviewed the submissions, the Court finds that application of the *Wolinsky* factors weighs in favor of approval. *First*, Plaintiff "alleged she was owed approximately $15,076.57 in unpaid overtime wages and approximately $6,932.14 in unpaid spread of hours, for a total of approximately $22,008.71 in unpaid wages, not including any other monetary relief that she may have been entitled to under the FLSA or NYLL." (*Id*. at 2.) Plaintiff settled for $32,00.00, which is above the initial amount calculated by Plaintiff.

*Second,* the settlement averts what could amount to considerable additional expenses and burdens in preparing their defenses and claims and pursuing further discovery.  The costs of preparing and taking this case through trial would have dramatically increased the costs to date. Plaintiff asserts that settling now represents a "fair and reasonable resolution as to her wage claims" in light of the "inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of her alleged unpaid wages claim." (*Id*. at 2.)

*Third*, the parties faced significant litigation risk if they proceeded to trial. Plaintiff argues that Defendants failed to pay overtime and spread of hour wages and also seek liquidated damages. (*Id*. at 2.) Defendants contested the dates of Plaintiff's employment, the hours alleged to be worked by Plaintiff and the pay received by Plaintiff. (*Id*. at 3.) Moreover, Defendants contested the merits of Plaintiff's spread of hours claim in light of this circuits case law, which indicates that the claims

belong only to those employees earning minimum wage, which Plaintiff did not allege. (*Id*. at 2-3.) Settlement, therefore, is an effective vehicle to avoid the significant risks and costs in further litigating this matter for all parties.

*Fourth*, the settlement is a product of arms-length bargaining between the parties, as both parties have been represented by experienced counsel and Plaintiff has "acknowledged the factual and legal disputes raised by Defendants regarding her claims. As such, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement." (*Id*. at 2.) The advocacy exhibited throughout this litigation demonstrates that the settlement is unquestionably the result of arms-length negotiations. *Fifth*, there is no indicia, nor is there even a suggestion to the Court, that the settlement is a product of fraud, coercion, or collusion. In sum, the parties have come to a reasonable settlement after arms-length negotiations which permits them avoiding the risks and burdens of litigating this dispute.

Moreover, the *Wolinsky* factors that weigh against settlement do not compel a rejection of the proposed settlement in this case. *First*, there is no indication in the record that there are similarly situated workers employed by Defendants. Though Plaintiff never formally moved for certification, it is likely that if there were similarly situated workers employed by Defendants, they could have joined the action. Further, the proposed Settlement Agreement releases Defendants from the claims brought only by Plaintiff. Any similarly situated workers, if they chose to litigate, would not be prejudiced from pursuing a future claim against Defendants.

*Second*, given the time and resources spent during the litigation process, it is likely that the Defendants will be deterred from violating the FLSA and NYLL, as alleged by Plaintiffs, in the future. It is also unlikely that Plaintiffs' individual circumstances will reoccur. *Third*, the Court finds that the record is bereft of any history of non-compliance with the FLSA by the same

8

employer or other employers in the same industry or geographic region, and the parties have not suggested otherwise.

*Fourth*, while the Court acknowledges that the desirability of a mature record that further develops labor law may exist in some cases, here, there is no special reason implicating that interest. Nonetheless, this factor alone does not compel denying a motion for approval of this settlement. While it is possible that further discovery could reveal more information as to similarly situated workers or a proper calculation of hours worked by Plaintiff, the parties have agreed not to venture down this path.

Finally, the proposed Settlement Agreement does not contain any of the problematic provisions that are identified in *Cheeks*. As previously mentioned, there is no confidentiality provision (*Id.*) Although the Agreement contains a release, it is not an unfettered general release requiring that Plaintiff waive any and all claims she may have against Defendants. (*Id.* at 3-4.) Rather, it is limited to claims that were, and could have been, brought under the FLSA, the NYLL, and the Spread of Hours Wage Order up to the date of the Settlement Agreement. (*Id.*) The release is thus reasonable. *See e.g.*, *Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030 at *2 (E.D.N.Y. Oct. 25, 2021). As discussed more fully below, Plaintiff's counsel has provided documentation supporting the proposed attorneys' fees and costs, which the Court finds are fair and reasonable. (*Id.* at A-1.)

**D. <u>Attorney's Fees</u>**

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3

(E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt.*, Inc., No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts should perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiff's Counsel is requesting $10,248.33, representing one-third of the settlement amount, $405.00 for the filing fee, $442.00 for the cost of service of the Summons and Complaint of Defendants and $300.00 for the mediation fee. (*Id.* at 4.) Thus, the proposed attorney's fees are reasonable under the percentage method.  But that doesn't end the inquiry. Having reviewed the statements and billing records of Plaintiffs' counsel, the Court also finds the proposed attorney's fees fair and reasonable after performing a lodestar cross-check.

In utilizing the lodestar approach, courts must multiply a reasonable number of hours required for the case with the attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see, e.g., Li v. Chang Lung Grp. Inc.*, No. 16 Civ. 6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17 Civ. 2520 (FB) (ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 17, 2018), report and recommendation adopted as modified by 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the district has been set at $300 to $400); *Torres v. Gristedes Operating Corp.*, 04 Civ. 3316 (PAC), 2012 U.S. Dist. LEXIS 127890, at *11 (S.D.N.Y. Aug. 6, 2012) (noting that courts in SDNY award hourly rates of $550 or more to "extraordinary attorneys held in unusually high regard by the legal community).

Plaintiff's counsel presents attorney time records in support of his Motion for Settlement Approval, which show hourly rates of $425.00 for Senior Managing Attorney Roman Avshalumov, $250.00 for Managing Attorney James O'Donnell, $175.00 for first-year associate Katelyn Schillaci and $75.00 for paralegal services (*Id* at A-2.) Accordingly, Plaintiff's lodestar amount is $10,120.00, multiplying the 13.1 hours spent on this case with at the $425.00 hourly rate, 14.1 hours spent on this case at the $250.00 hourly rate, 1.5 hours spent on this case at the $175.00 hourly rate and the 10.2 hours spent on this case at the $75.00 hourly rate. Courts in this circuit have approved similar attorneys' fees. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (finding that "rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time . . . are reasonable and consistent with rates allowed in this district.").

The amount Plaintiff seeks under the percentage method is nearly the same exact figure calculated under the lodestar method, which presents as very appropriate in light of the fact that "[c]ourts regularly award lodestar multipliers from two to six times lodestar." *See Johnson v. Brennan,* No. 10 CIV. 4712 CM, 2011 WL 4357376 at *20  (S.D.N.Y. Sept. 16, 2011) (collecting cases); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (awarding "approximately 6.3 times" the lodestar). Moreover, this total amount of fees and costs is unopposed by Defendants, weighing in favor of approval of this amount.  Accordingly, the lodestar cross-check affirms the requested attorney's fee of $10,248.33 is fair and reasonable in this case.

## CONCLUSION

For the reasons stated herein, the motion for *Cheeks* approval is hereby **GRANTED**.  The settlement is approved, and this action is dismissed prejudice and without costs, except as may be stated in the Settlement Agreement. The Court will retain jurisdiction to enforce the Settlement Agreement. *See Gutierrez v. Jhin*, No. 18-CV-00889 (BCM), 2019 WL 13412909, at *2 (S.D.N.Y. Sept. 9, 2019) ("The decision whether to retain jurisdiction over a case for enforcement purposes is discretionary with the district court."); *Brandner Corp. v. V-Formation, Inc.*, 98 F. App'x 35, 37 (2d Cir. 2004) ("[A] federal district court does not retain jurisdiction to enforce a settlement agreement unless the court, typically as part of its order of dismissal, orders the parties to comply with the terms of the settlement agreement or incorporates terms of a settlement agreement explicitly retaining jurisdiction into one of its orders."); *see also Cross Media Mktg. Corp. v. Budget Mktg., Inc.*, 319 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (to properly request the court retain

jurisdiction for the purpose of enforcing their agreement, the parties were required to submit the

settlement agreement to the court and provide so in their stipulation of dismissal).

     The Court directs the Clerk of the Court to close this case.


Dated: Central Islip, New York
       September 30, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
